REQUESTED BY: Dear Senator Simon:
You have asked for our opinion as to the constitutional validity of LB 188. In our opinion the bill is constitutionally suspect in several respects. Section 1(1) of the bill provides:
 "The maximum amount of any ad valorem tax on real property shall not exceed one and one half per cent of the actual value of such property. The tax shall be collected by the counties and apportioned according to law to the political subdivisions within the counties."
Standing alone, the first sentence is vague and uncertain in referring to `any tax.' Does this mean that the sum of all taxes levied on the property in any given year may not exceed one and one-half percent of the actual value of the property, or does it mean that no one tax may exceed that figure? The literal language would dictate the latter interpretation. However, the second sentence would support the first interpretation, since there would be no apportionment if only one political subdivision was involved, as the act would simply lower the permissible mill levy of the subdivision whose budget would require a higher mill levy. We will therefore interpret the act to place a minimum levy on the total taxes which may be levied on the property.
The act does not specify how the tax is to be apportioned, but we assume that if the total mill levy went over one and one-half percent of the value, the taxes actually collected would be one and one-half percent of the value, and the share of each taxing subdivision would be reduced by the same percentage.
We believe this may violate the uniformity clause of Article VIII, section 1, and may constitute unreasonable classification, in violation of Article III, section 18 of the Nebraska Constitution, and perhaps the Equal Protection Clause of the Fourteenth Amendment.
If all taxpayers in a county paid taxes to the same taxing entities, and to none outside the county, perhaps these problems would not exist. But let us take an example to show the problems. Two properties lie across the road from each other. One is within the limits of a city, and the other is not. Both, however, are in the same school district and other taxing districts, except the city. The combined county, school district, and miscellaneous levies bring the taxes on the property not in the city to just one and one-half times the value of the property.
The property in the city is subject to the same levies as the other property, and in addition is subject to the city levy, which takes it over the limit. Let us suppose that the city tax would bring the total up to two percent. Nevertheless, all that could be collected would be one and one-half percent. Therefore, the taxes payable to the county, school district, and other subdivisions from this property would be reduced by one-fourth. The property outside the city would be paying more for the support of the county, school district, etc. than the property in the city. We believe that this would be in violation of the constitutional provisions referred to above.
In State v. Osborn, 60 Neb. 415, 83 N.W. 357 (1900), the court said that the rule of uniformity is satisfied if observed by each jurisdiction imposing the tax. In Statev. Savage, 65 Neb. 714, 91 N.W. 716 (1902), a syllabus by the court says:
 "The constitution requires that in the assessment of taxes for municipal purposes, such taxes shall be uniform with respect to persons and property within the jurisdiction of the body imposing the same."
As we have shown, the application of LB 188 would sometimes make uniformity within each taxing district impossible. We also call attention to the fact that the bill refers only to real property. No such limitation can be put on the taxation of real property that is not also applicable to taxable personal property, without violation of Article VIII, section 1.
Section 2 of the bill provides:
 "The actual value may reflect from year to year the inflationary rate not to exceed two per cent for any given year or reduction as shown in the consumer price index or comparable data for the area under taxing jurisdiction."
This language is very unclear, and we are not sure what is intended. Property is required to be assessed at actual value, and, presumably, that value reflects inflationary or deflationary trends. If this section means that actual value for assessment purposes is increased only two percent per year, it is in clear violation of Article VIII, section 1, which requires taxes to be raised by evaluation uniformly. An arbitrary limit on value cannot be uniform, as the value of different properties fluctuates at different rates.
Or, if the section means that the property shall be assessed at actual value, but that two percent may be added each year for purposes of the limitations of LB 188, we have problems of both clarity and uniformity. How this would be applied, if at all, to new property is not specified. If it means that existing property shall be assessed at actual value, and that two percent per year can be added to that value for purposes of computing the maximum tax, what would be done as to new construction? If the two percent is not also applied to new construction, an obvious violation of uniformity results.
Section 3 of the bill would require a two-thirds vote of the Legislature to enact changes in state laws increasing state taxes. This provision is clearly ineffective. ArticleIII, section 13 of the Nebraska Constitution provides that bills shall be passed by the majority of all members elected. Future Legislatures cannot be bound by a statute, which the Legislature could, after all, repeal. The provision of section 3 could have no greater force that the subsequent bill increasing taxes. We therefore believe that section 3 is in violation of Article III, section 13 of the Constitution.
Section 4 of the bill provides:
 "Any political subdivision with taxing authority, by a two-thirds vote of the qualified electors of such subdivision, may impose special taxes on such subdivision, except ad valorem taxes on real property within such political subdivision."
It is difficult for us to say whether or not this is constitutional. It would, apparently, authorize any political subdivision to impose any type of tax the mind of man can conceive, except additional property taxes, including sales and income taxes, cigarette taxes, gasoline taxes, and the many other taxes imposed by this or other states. LB 188 lays down no limitations or guidelines whatever for these taxes.
Were this a delegation of authority to an administrative agency, there is no question but what it would amount to an unlawful delegation of legislative authority, since no standards are laid down for the exercise of the authority. However, it is not so clear when a political subdivision is involved. In Nickel v. School Board of Axtell, 157 Neb. 813,61 N.W.2d 566 (1953), the court discussed delegation of legislative powers to local authorities, but implied that standards were necessary, saying:
 "We find the Legislature had authority to delegate to the county committee the authority given it and that the Act provides reasonable limitations and standards for its proper guidance in carrying them out."
While we are in some doubt as to the validity of such a broad delegation of taxing authority to political subdivisions, we are not prepared to say categorically that it is invalid. There are a number of cases holding invalid delegation of legislative authority to administrative bodies because of lack of standards set out in the statute, but we have found none holding such delegation to a political subdivision void. It is therefore possible that the court would uphold section 4 of the act, in spite of its complete lack of guidelines or limitations, except as to property taxes.